UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

Coretta Roddey,

                                Civil Case No.

                     Plaintiff,

      -against-                           **COMPLAINT**

Rajesh Menon aka
Pudukulangare Rajesh Menon,            Jury Trial Demanded


                              Defendant.
_____x

       Plaintiff Coretta Roddey ("Plaintiff" or "Roddey") by and through her attorney Law Office of Susan Ghim alleges against Defendant Rajesh Menon aka Pudukulangare Rajesh Menon ("Defendant" or "Menon") as follows:

## NATURE OF THE ACTION

1.      Plaintiff was an employee with Infosys Limited ("Infosys") from on or about October 29, 2014 to on or about September 23, 2016.  At all relevant times Plaintiff was employed as a Principal Business Consultant and reported to Defendant who was the sole managing Partner of Infosys Financial Services ("FS") Division in the United States.  The role of a Principal Business Consultant was a client facing position that entailed working with an Infosys client's employees, on-site at a client's location.  At all relevant times, Plaintiff was the sole African American Principal Business Consultant.   At all relevant times, Defendant managed the FS division at its sole office in New York, New York.  On or about September 23, 2016, Infosys terminated Plaintiff stating that Plaintiff spent "prolonged time on bench due to the inability to staff you on Infosys projects."

2.      At the deposition of Rajesh Menon held on or about August 5, 2022, Defendant admitted his personal involvement in Plaintiff's termination from Infosys on or about July 1, 2016. Defendant further testified at this deposition about his interference with and that he prevented Plaintiff from being assigned to client work projects during the relevant time period of Plaintiff's employment from on or about 2015 through 2016.  Based upon information and belief, because of Plaintiff's African American race, Defendant stated to other partners and supervisors at Infosys that Infosys was risking its reputation by assigning Plaintiff to client projects. This comment was notwithstanding clients' positive feed back about Plaintiff's work performance and that Infosys clients directly selected  Plaintiff to work on their projects after the Infosys clients' own direct interviews and screening for their projects.    Based upon information and belief, since on or about July 1, 2016, the human resources department was fully aware that Defendant recommended Plaintiff's termination and would not permit Plaintiff to be assigned to any further client projects. Infosys concealed Plaintiff's claims against Defendant under the guise of Infosys clients failing to select Plaintiff to work on their projects.

3.      On or about September 22, 2020, Plaintiff timely filed a demand for arbitration with Infosys pursuant to a Mutual Arbitration Agreement dated on or about October 29, 2014 (2014 Agreement).  Under the 2014 Agreement, the place of arbitration was where the employee "works or worked when the claim arose."  The last project Plaintiff worked was for American Express ("AMEX") located in New York, New York.  Prior to AMEX, Plaintiff worked on a project for New York Life located in New York, New York.  The last project that Plaintiff was scheduled to work by the client UBS which Defendant prevented Plaintiff from working was also located in New York, New York.  On or about December 2020, American Arbitration Association ("AAA") sent Plaintiff and Infosys a list of New York arbitrators to choose from for the Arbitration of

Plaintiff and Infosys' dispute about her 2016 termination.  Based upon information and belief, Defendant misrepresented to AAA that Plaintiff last worked in Georgia by being benched "onsite" in Georgia.  This misled AAA to move Plaintiff's arbitration with Infosys to Georgia over Plaintiff's objections.   Accordingly, Defendant tortiously interfered with the 2014 Agreement between Plaintiff and Infosys and caused Infosys to breach the 2014 Agreement.  Defendant was not a party to the 2014 Agreement and there was no arbitration agreement between Plaintiff and Defendant individually.

4.      Based on the foregoing, Plaintiff alleges that but for her race, she would not have been denied work opportunities and/or terminated for spending "prolonged time on bench pursuant to 42 USC §1981; Defendant tortiously interfered with and prevented Plaintiff from obtainment of employment on client projects and obtaining bonuses under New York State common law cause of action for tortious interference with employment or business opportunities; and Defendant tortiously interfered with Plaintiff's mutual arbitration agreement with Infosys to arbitrate their dispute in New York where Plaintiff last worked when the claims concerning her termination arose.

<u>JURISDICTION</u>

5.      This Court has original jurisdiction over this action pursuant to 28 USC §1331, §1337, 42 USC §1981 et seq.

6.      This Court has supplemental jurisdiction over the New York state law claims under the 28 USC  §1367(a)

7.      This Court may properly maintain personal jurisdiction over Defendants under Rule 4 of the Federal Rules of Civil Procedure because Defendant's contacts with this state and this judicial

district are sufficient for exercise of jurisdiction over Defendant so as to comply with traditional notions of fair play and substantial justice.

8.      Venue in this district is proper under 28 USC §1391 because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

9.      At all relevant times Defendant managed the Financial Services Division of Infosys Limited ("Limited")  and worked out of its office located in New York, county, in the state of New York with an address of: One World Trade Center, New York, NY  which is located in this district. Moreover, Plaintiff was physically present and worked onsite for Infosys clients located within this Court's district during the relevant time period when substantial parts of the events and omissions occurred from which Plaintiff's claims arose.

## STATEMENT OF FACTS

The Parties:

Defendant Rajesh Menon:

10.     Based upon information and belief Defendant Rajesh Menon aka Pudukulangare Rajesh Menon ("Defendant" or "Menon") was at all relevant times to date, a resident of the state of New Jersey.

11.     Based upon information and belief at all relevant times, Defendant was the sole managing partner of the Financial Services ("FS") Division of Infosys Limited ("Infosys") at its office located at One World Trade Center, New York, NY 10007.

12.     Based upon information and belief, there is only one (1)  FS Division of Infosys in the United States ("US") located in New York County, New York State ("NYC").

13.     Based upon information and belief, all other FS Partners, managers, supervisors and employees reported to Defendant during the relevant time period.

14.     Based upon information and belief, Defendant at all relevant times had the authority to hire, fire, discipline, set rates of pay, bonuses, and any other remuneration, assign work, terminate assigned work, and set or change all other terms and conditions of Plaintiff's employment with Infosys.

15.     Based upon information and belief, Defendant was aware that he and his employees were subject to federal and New York state, local employment laws including laws and company policies prohibiting discrimination and harassment based on protected class status such as race and gender.

16.     Based upon information and belief, Defendant did not educate his staff on or enforce federal, state, local laws and company policies prohibiting discrimination and harassment based on protected class status such as race and gender.

17.     Based upon information and belief, as alleged *infra*, by failing to enforce such anti-discrimination and harassment laws and company policies on his staff, Defendant furthered and engaged in such unlawful conduct by his staff against Plaintiff.

18.     Based upon information and belief, at all relevant times, Defendant was aware that Plaintiff was interviewed directly by the clients and the clients directly selected Plaintiff to work on their projects, specifically, the AMEX and UBS projects during 2016.

19.     Based upon information and belief, at all relevant times, Defendant was aware that on or about February 2016, Infosys' client AMEX provided positive feedback about the Plaintiff's work performance

20.     Based upon information and belief Defendant misrepresented to AMEX that Plaintiff was not available to work on the second project starting on or about March 2016.

21.     Based upon information and belief Defendant misrepresented to Plaintiff that AMEX did not select her for the second project starting on or about March 2016

22.     Based upon information and belief, Defendant interfered with and prevented Plaintiff from beginning work on the second Amex project on or about March 2016 after client AMEX selected Plaintiff to work on the project.

23.     On or about March 2016, Plaintiff was interviewed directly by Infosys client UBS and UBS directly selected Plaintiff work on a project to start on or about March 2016.

24.     Based upon information and belief Defendant misrepresented to Plaintiff that the client UBS did not select her to work on the project starting on or about March 2016 because UBS wanted a worker who was local to NYC.

25.     Based upon information and belief Defendant misrepresented to UBS that Plaintiff was not available to start work on the UBS project scheduled to start on or about March 2016

26.     On or about August 5, 2022, Defendant testified at his deposition that UBS located in NYC would not have requested someone local to NYC and there were other employees who travelled from outside NY to work for UBS in NYC.  For instance, Defendant testified that he recalled one employee who travelled to NYC from Wisconsin to work on the UBS project.

27.     Based upon information and belief, Defendant intended to and successfully deprived Plaintiff of her employment opportunities with AMEX and UBS to deprive her of her earnings including bonuses based on Plaintiff's completion of work projects and another based on the earnings of Infosys.

28.     "The most disrespected person in America is the Black woman." Malcolm X. May 5, 1962, Los Angeles, CA.

29.     Inherent and hidden racial and gendered problems for African American women include being "perceived as being not professional or not a "good fit" for the organizational culture.  This fram[ing] consists of "various racial stereotypes, narratives, ideologies, emotions, images, and interpretations that justify and perpetuate daily racial oppression."  Tsedale M. Melaku *Why Women and People of Color in Law Still Hear "You Don't Look Like a Lawyer"* Harvard Bus. Rev. (2019)

30.     Black women "need to work longer or harder to get noticed and the pressure to be flawless, because the stereotypical assumption of incompetence leaves little to no margin for error."  Tsedale M. Melaku *Why Women and People of Color in Law Still Hear "You Don't Look Like a Lawyer"* Harvard Business Review (2019)

31.     "Treating racist, misogynistic… behavior as two people in disagreement equalizes behavior where there is often an imbalance of power.   The effect is that it allows the decisionmaker …to avoid taking responsibility for stopping the unprofessional conduct."   Leah Goodridge *Professionalism as a Racial Construct* UCLA Law Rev. (2022)

32.     Comments such as "team player," "get along," "minor bump," "take personally," "right approach" point to a hidden fact that people are offended by an African American woman challenging racism than by a white person perpetuating it. Leah Goodridge *Professionalism as a Racial Construct* UCLA Law Rev. (2022)

33.     "When a black woman in an immaculately tailored suit walks through a corridor …is stopped by a white male associate (whom she sees daily), and is asked to make copies, the you-don't-look-like mentality is often to blame."  Tsedale M. Melaku *Why Women and People of Color in Law Still Hear "You Don't Look Like a Lawyer"* Harvard Business Review (2019)

34.     During all relevant times of Plaintiff's employment, non-African American supervisors relegated Plaintiff to clerical tasks, hushed her at staff meetings in front of employees Plaintiff was assigned to lead and complained to Defendant that Plaintiff's work performance was substandard without substantiated bases in fact.  Supervisors and co-workers framed Plaintiff as not working quickly enough or having issues with management when they were being complained of as causing issues.

35.     Racism perpetuated by a member of a minority group or protected class against a member of another minority group or protected class is unlawful and similarly perpetuates an oppressive and white supremacist corporate work place organization or structure.

36.     Based upon information and belief, since the start of Plaintiff's employment with Infosys, Defendant sided with and fostered supervisors' mischaracterization of Plaintiff, the only African American principal business consultant, as not working quickly enough or having difficulty with client relations or communication skills or having low work performance skills or incapable of completing work in a timely manner.

37.     Based upon information and belief, Defendant was aware of negative stereotypes of incompetence about African Americans and that Plaintiff's supervisors made unsubstantiated and negative, racist and stereotypical comments about Plaintiff because she was African American.

38.     Based upon information and belief, Defendant was aware that supervisors' negative comments about Plaintiff's work performance were factually baseless because Defendant did not at any relevant time receive any direct negative feedback from clients about Plaintiff.

39.     Based upon information and belief, Defendant was aware at all relevant times that Plaintiff's supervisors gave Plaintiff unreasonable deadlines to complete work assignments, gave Plaintiff work tasks inappropriate to her position such as administrative and clerical tasks when

she was supposed to lead a team of employees, denigrated her skills when other managers stated that Plaintiff had good technical skills, and cursed at Plaintiff.  Defendant further failed to address these complaints with Plaintiff or her supervisors at any relevant time when Defendant was in the ultimate position to enforce anti-discrimination and ant-harassment policies in his office.

40.     Based upon information and belief, during the relevant time period, Defendant deliberately ignored Plaintiff's concerns and complaints about supervisors' and employees' unlawful conduct to harm Plaintiff.

41.     Based upon information and belief, Defendant conspired with Infosys human resources to terminate and retaliate against Plaintiff for making complaints about discrimination and unlawful workplace conduct by her supervisors and co-workers.

42.     Based upon information and belief on or about July 1, 2016, Defendant requested to Infosys human resources department located in Texas, in the United States, and other partners within the FS Division that Plaintiff be terminated from her employment with the employer.

Plaintiff Coretta Roddey:

43.     At all relevant times, Plaintiff was a resident of Georgia.

44.     Plaintiff was hired on or about October 29, 2014 by Infosys as a Principal Business Consultant which entailed providing business consultation concerning electronic business data to fortune 500 companies.   Plaintiff's work duties required working on-site at client locations and interactions or collaboration with client employees and executives.

45.     Prior to her employment with Infosys, Plaintiff possessed experience in leadership and management of large groups of employees in addition to a Masters degree in information systems and a bachelor's degree in accounting with honors.   Plaintiff was further accepted into the Business Analytics program at the Harvard Business School in 2020.

46.     Prior to Plaintiff's work in public sector information technology work, Plaintiff served in the United States Army, and was the only woman in the 7th PSC Division of Ft. Ord, California to successfully complete its top tier aviation program.

47.     At all relevant times, Plaintiff was qualified and disciplined in her profession.

48.     Plaintiff accepted Infosys' job offer relying on the offered annual salary of approximately $165, 000 per year plus bonuses.

49.     At all relevant times, Plaintiff was entitled to bonuses: one based on the company's annual earnings and another based on Plaintiff's completion of her assigned project.

50.     Plaintiff further accepted employment with Infosys relying on the mutual arbitration agreement that she was required to sign on or about October 29, 2014, that the place of arbitration and the governing law would be the State of New York.  When human resources wrote an email on or about October 2014 that Plaintiff would be headquartered in GA, Plaintiff promptly replied by email stating that headquarters should be NY as the position she accepted in the FS division was located in NY.  Plaintiff unequivocally expressed her intent to avail herself of the employment protections under New York State laws and intended to physically work in NY.

51.     At all relevant times, Plaintiff travelled to New York, New York ("NYC") to work onsite at client's offices located in NYC.

52.     At all relevant times, Plaintiff was the sole African American Principal Business Consultant.

53.     Plaintiff's last three (3) projects worked prior to her termination were located in NYC.

54.     Plaintiff's last project to which she was assigned and scheduled to work was for client UBS located in NYC on or about March 2016.  Plaintiff had already interviewed directly with the client UBS and was scheduled by UBS to commence work on its project.

55.     Based upon information and belief, on or about March 2016, Defendant interfered with and prevented Plaintiff from starting work on the project for UBS blaming the client for suddenly requesting a local employee.

56.     Based upon information and belief, on or about March 2016, Defendant interfered with and prevented Plaintiff from starting work on the UBS project to deprive her of any bonuses and any other remuneration and to sabotage Plaintiff's business reputation with Infosys clients.

57.     Based upon information and belief, since or about 2015, Defendant interfered with Plaintiff's other work opportunities and prevented Plaintiff from realizing bonuses and remuneration in order to divert those opportunities to non-black principal business consultants.

58.     Based upon information and belief on or about 2015 and 2016, Defendant communicated to other FS partners and human resources employees that Infosys was risking its reputation by assigning Plaintiff because Plaintiff was African American.

59.     After on or about March 2016, Plaintiff was placed on "bench" meaning she was not working on a client assignment and awaiting her next assignment.  Plaintiff remained on "bench" until she was terminated from her employment on or about September 23, 2016.

60.     Based upon information and belief, Defendant intentionally and tortiously interfered with Plaintiff's work opportunities after February 2016 to prevent and deprive Plaintiff of bonuses, remuneration and set up Plaintiff for termination for being on prolonged bench.

61.     On or about September 23, 2016, because Defendant prevented Plaintiff from being assigned to any client projects since on or about February 2016, human resources terminated Plaintiff for being on bench for a prolonged period of time.

62.     Based upon information and belief, no other principal business consultant who was on bench for over ninety days was terminated.

11

63.     Based upon information and belief, on or about September 2016, there was at least one other non-African American principal business consultant who was on bench for a longer period of time than Plaintiff but was not terminated as Plaintiff was terminated with a lesser period of time on bench.

64.     While on bench during on or about February 2016 through September 2016, Plaintiff witnessed other non-African American principal business consultants with similar qualifications and less experience placed on client projects ahead of Plaintiff.

65.     While on bench during on or about March 2016 through September 2016, Plaintiff regularly contacted human resources and Defendant by email about upcoming work opportunities. During this time neither Defendant nor human resources responded to Plaintiff.

66.     While on bench during on or about February 2016 through September 2016, Plaintiff did not await assignment "onsite" at Infosys' office located in GA.  Plaintiff did not at any relevant time during her employment with Infosys, work at Infosys' office located in GA.

Hostile Work Environment.

67.     At the start of Plaintiff's employment on or about November 2014, Plaintiff worked for approximately one month on a project in Georgia.  Plaintiff's supervisor and co-workers cursed at her during the work day.

68.     Plaintiff's supervisor Arun regularly made derogatory statements to the effect of, he would never "f**king listen to anything Plaintiff had to say" in front of other employees.  Plaintiff witnessed supervisor Arun's interactions with other non-African American employees and did not curse at other employees in the manner he did to Plaintiff.  Supervisor Arun further excluded Plaintiff who was assigned as a team leader from meetings with clients.  Being unable to effectively

lead or work in that environment, Plaintiff complained and requested to be transferred to a project in NYC.

69.     Based upon information and belief, on or about 2015, Plaintiff's supervisor Arun misrepresented to Defendant that the client complained about Plaintiff and wanted Plaintiff removed from the project in GA.  However, there was never any email or specific detail about who the client representative was who complained and requested Plaintiff's removal

70.     Plaintiff's supervisors also relegated Plaintiff to administrative tasks such as taking meeting minutes at every meeting and providing secretarial or clerical tasks to the supervisors when Plaintiff was supposed to be leading a team of employees.

71.     During on or about 2015 Plaintiff started work on a project for client New York Life located in NYC.  Plaintiff's supervisor Samir on this project told Plaintiff to hush at office meetings that undermined her ability to lead that group of employees.  Plaintiff's supervisor also routinely set Plaintiff up by failing to include her in meetings and not relaying client requests.  Thereafter, Plaintiff's supervisor would report to Defendant that Plaintiff was not performing her job.

72.     Based upon information and belief, on or about 2015 Plaintiff's supervisor Samir on the NY Life project misrepresented to Defendant that the client complained about Plaintiff's work performance and the client requested Plaintiff be removed from the project.  However, again there was never any email from the client or specific details about the alleged client complaints.

73.     On or about February 1, 2015, Plaintiff complained to the Partner in charge of the NY Life project that the supervisor needed clarification about Plaintiff's role as a team lead.  This partner reported to Defendant.

74.     During the relevant time period of Plaintiff's employment in 2015 and 2016, Plaintiff raised concerns and complaints about gender bias and that the supervisors may have also talked

down to her, belittled her and harassed her because she was a female principal business consultant. But for Plaintiff's race, her gender bias concerns would have been addressed. Plaintiff's concerns were at all relevant times based on her treatment as an African American woman because at all relevant times, her race and gender were inextricable and she suffered discriminatory treatment incomparable to white women. Therefore, all discriminatory treatment received by Plaintiff was at all times based on her African American race.

75.     Based upon information and belief, during on or about 2016, Defendant stated in an email to other managers and partners that Infosys was risking its reputation by assigning Plaintiff. At that time, Plaintiff was the only African American principal business consultant and Defendant assigned all non-African American principal business consultants ahead of Plaintiff.

76.     At a deposition that took place on or about August 5, 2022, Defendant testified that he had never received any complaint about Plaintiff's work performance directly from any client.

77.     Based upon information and belief, the one client feedback email dated February 27, 2016, that was in the possession, custody and control of Defendant expressly thanked Plaintiff after successful completion of the project, for "all of her hard work and assistance..." and that "[i]t ha[d] been a quick paced project with many long hours, fast turnarounds and deliverables and [the client] truly appreciate the effort she has provided in moving the project forward. Thank you Coretta for all that you've done!"

78.     After the successful completion of the aforementioned AMEX project, Plaintiff applied for another project with that same client. However, human resources stated to Plaintiff that the client did not select her for the project.

79.    Based upon information and belief, Defendant obstructed and interfered with Plaintiff's assignment with the client AMEX and prevented her from obtaining that employment opportunity and any attendant bonuses or remuneration.

80.    On or about March 6, 2016, Plaintiff applied for, interviewed with another Infosys client UBS as detailed *supra*, who directly interviewed and hired Plaintiff for its project work.   The Infosys client scheduled Plaintiff to start work after Plaintiff successfully completed a background check.

81.    Defendant Menon, then sent an email to Plaintiff blaming the client for taking Plaintiff off its project because it wanted a "local" employee.  At his August 5, deposition, Defendant testified that the UBS client located in NYC would not have requested a local employee and that there were other Infosys employees on the same project who travelled from outside of New York State.

Defendant's termination of Plaintiff's employment

82.    At all relevant times, Defendant had the authority to hire, fire and over all terms and conditions of employment of Plaintiff.

83.    Based upon information and belief, on or about July 1, 2016 Defendant Menon made a request to the human resources department and at least two other partners of Infosys to terminate Plaintiff's employment.   After Defendant interfered with and prevented Plaintiff from obtaining work assignments, this provided a ruse for human resources to terminate Plaintiff for being on bench for a prolonged period of time.

84.    Defendant Menon testified at his August 5, 2022 deposition that he had no intention of placing Plaintiff on any work assignments after July 1, 2016.

85.    On or about July 6, 2016, Plaintiff complained to human resources that Defendant Menon may be retaliating against her for her allegations that the Infosys supervisor on the AMEX project

submitted an inaccurate Employee Feedback Form ("EFF") stating that AMEX was dissatisfied with Plaintiff's work performance.  This was in direct contravention of the email described *supra* that AMEX sent Plaintiff with copies to other AMEX employees only, thanking Plaintiff for her hard work and fast turnaround on deliverables and specifically commending Plaintiff's input and good work.

86.     Because neither Defendant Menon nor the human resources department informed Plaintiff at any relevant time that she was recommended for termination or that while they were investigating her July 6, 2016 complaint, that she would not be considered for work assignments, both Defendant and human resources concealed Plaintiff's claims against Defendant.

87.     Based upon information and belief, at all relevant times, Defendant imposed unreasonable deadlines for assignments and blamed Plaintiff for assignments that were already delayed or had performance issues because of the previous supervisors or principal business consultant.

88.     Based upon information and belief, but for Plaintiff's African American race, Defendant would have addressed derogatory statements, comments and demeaning treatment of Plaintiff that was also gender based.

89.     Based upon information and belief, non-African American female principal business consultants were not required to suffer derogatory statements and treatment from supervisors about their work performance based on their gender.

90.     Plaintiff had no notice of any complaints about her work performance by any client or that she was being disciplined.  To the contrary, human resources sent Plaintiff possible work assignments and made no mention of Defendant Menon's request for her termination or that Defendant Menon retaliated against her.

91.     Fraud requires the Plaintiff to plead, 1) misrepresentation or omission of a material fact; and 2) Defendant was aware of the falsity of the representation or omission; and 3) Plaintiff justifiably relied on the misrepresentation or omission; and 4) Plaintiff was damaged.

92.     At the completion of human resources' investigation of Plaintiff's July 6, 2016 complaint, it determined that the allegations about Defendant Menon retaliation and preventing her from work assignments was unfounded.

93.     Based upon information and belief, at the time of its finding that allegations of retaliation by Defendant was unfounded, human resources was aware since at least July 1, 2016 that Defendant requested Plaintiff's termination and that Defendant had no intention of placing Plaintiff on any client assignments.

94.     Plaintiff justifiably relied on human resources misrepresentations as she was not aware at that time that Defendant requested her termination on or about July 1, 2016.

95.     It was not until August 5, 2022 at Defendant's deposition  that he revealed for the first time to Plaintiff that he was solely responsible for requesting Plaintiff's termination and that he had no intention of allowing Plaintiff to be placed on any client projects during 2015 and 2016.  The unfounded determination by human resources regarding Plaintiff's July 6, 2016 complaint that Defendant was retaliating against her, further concealed Plaintiff's claims against Defendant. Plaintiff was damaged in being prevented from timely filing her claims against Defendant.

96.     Based upon information and belief, on or about August 5, 2022, Defendant knew that the statute of limitations for claims against him had lapsed because Defendant and human resources concealed Plaintiff's claims against him.  Accordingly, no amount of diligence by Plaintiff would have revealed her claims until after the statute of limitations had expired.  Within approximately

one day after receipt of the August 5, 2022 deposition transcript on or about August 22, 2022, Plaintiff promptly filed the instant Complaint

97.     As alleged *supra*, Plaintiff's termination letter dated on or about September 23, 2016, from Infosys human resources department stated that Plaintiff's employment was terminated due to Plaintiff's "prolonged time on bench due to the inability to staff you on Infosys projects."   This misrepresentation further fraudulently concealed Plaintiff's claims against Defendant because it was Defendant who caused Plaintiff's prolonged time on bench and prevented Plaintiff from being staffed on Infosys projects based on her race.

98.     At all relevant times, Defendant was the sole managing partner of the Financial Services ("FS") division of Infosys and all partners in FS reported to him as he testified at his deposition on or about August 5, 2022.

99.     Based upon information and belief, even as the human resources employees sent out Plaintiff's resume for projects to other FS partners during Plaintiff's bench period, after Defendant requested Plaintiff's termination on or about July 1, 2016, human resources was aware or should have been aware that Defendant would not allow Plaintiff to be assigned to any further client projects.   Accordingly, human resources made misrepresentations to Plaintiff that they were submitting her resume for projects and that Infosys clients did not select her to work on their projects.  These misrepresentation further concealed Plaintiff's claims against Defendant.

100.     On or about August 2016, Plaintiff participated as a witness in a discrimination class action against Infosys in Wisconsin.  Plaintiff testified as to the hostile work environment; discrimination in work assignments; and the retaliation she endured for complaints to Infosys.

101.     Based upon information and belief, Defendant requested to human resources that Plaintiff be terminated for her participation as a witness in the WI discrimination class action on or about

August 2016.  The temporal termination of Plaintiff in September 2016 is prima facie proof that Defendant retaliated against Plaintiff for complaining of racial and gender discrimination by Infosys.

102.    Based upon information and belief, Defendant retaliated against Plaintiff on or about July 1, 2016 by requesting her termination further interfering with Plaintiff's work opportunities because Plaintiff filed a complaint with human resources on or about June 2016 that her Infosys supervisor submitted an inaccurate EFF stating that client AMEX complained about Plaintiff's work performance.

103.    Based upon information and belief, Defendant retaliated against Plaintiff in 2015 by interfering with and preventing Plaintiff's work opportunities because Plaintiff complained about her supervisors on the Suntrust project in GA and at NY Life in NYC.

104.    Based upon information and belief, Plaintiff was placed on the AMEX project in 2016 because it was short in duration.  Because Plaintiff successfully completed that project as detailed throughout this complaint, Plaintiff was likely to be placed by AMEX on their next project, Defendant interfered and prevented Plaintiff's placement on that project.

105.    On or about September 22, 2020, Plaintiff filed a demand for arbitration with the American Arbitration Association ("AAA") for wrongful termination, hostile work environment and retaliation against Infosys pursuant to a 2014 Mutual Arbitration Agreement ("2014 Agreement") with Infosys.

106.    The place of arbitration clause contained in the 2014 Agreement stated in relevant part, "the arbitration shall take place in the county in which the Employee works or worked at the time the arbitrable dispute or claim arose."

107.    As stated throughout this Complaint, the last project that Plaintiff worked for was located in NYC and the last work opportunity taken from Plaintiff was located in NYC.

108.    On or about December 2020, AAA issued an arbitrator's list of New York arbitrator's for selection to arbitrate Plaintiff's dispute in New York pursuant to the terms of the 2014 Agreement.

109.    Based upon information and belief on or about January 2021, Defendant interfered with Plaintiff's 2014 Agreement which Defendant was not a party to, by misrepresenting that the last place Plaintiff worked was in GA when Defendant knew that was false and Plaintiff last worked in New York.  This misrepresentation by Defendant to Infosys caused Infosys to breach the 2014 Agreement and diverted the arbitration to GA with arbitrators and laws that were less protective of employees' rights as New York.  Infosys furthered the misrepresentation that Plaintiff's last place of work was in GA to AAA and over the objections of Plaintiff in January 2021, AAA moved Plaintiff's arbitration to GA.  Thereafter, Plaintiff who was pro se, was coerced to either withdraw the arbitration or move forward with arbitration in GA.

110.    Based upon information and belief, Defendant further misrepresented to Infosys on or about January 2021, that a 2016 Mutual Arbitration Agreement ("2016 Agreement") applied to the arbitration between Plaintiff and Infosys.  Defendant knew that Plaintiff never signed or otherwise agreed to the 2016 Agreement.  This misrepresentation by Defendant to Infosys and AAA caused Infosys to surreptitiously displace the 2014 Agreement with the 2016 Agreement with the AAA and the Georgia Arbitrator.

111.    The erroneous application of the 2016 Agreement over the objection of Plaintiff on or about June 1, 2022, caused the Arbitrator to apply Texas law.  And under the guise of Texas law, the Arbitrator coerced Plaintiff to withdraw her garden variety mental anguish claims and took away further rights and claims that Plaintiff had under the 2014 Agreement.

112.    The GA arbitrator did not set the governing law of the arbitration at the initial conference on or about July 2021.  The GA arbitrator did not clarify at this initial conference the date of the arbitration agreement.  Instead, on or about June 1, 2022 at a discovery conference, the GA Arbitrator declared that TX law applied pursuant to the invalid 2016 Agreement.

113.    On or about July 25, 2022, Plaintiff filed a Petition in this Court to compel arbitration in NY in related case no. 22 cv 6310 based on misrepresentations set forth *supra* by Defendant and Infosys.

114.    Based on Defendant's misrepresentations to Infosys and AAA, Defendant tortiously interfered with Plaintiff and Defendant's 2014 Agreement that damaged Plaintiff in the amount or value of her claims lost as a result of the 2020 arbitration that was diverted to GA in 2021 and as a result of the GA Arbitrator's coercion of Plaintiff to withdraw her claims under Texas law and dismissing Plaintiff's other rights and claims under the 2014 Agreement.

115.    Based upon Defendant's misrepresentations, Plaintiff suffered additional costs and attorneys fees to object to the GA Arbitrator's rulings and to bring the Petition to compel arbitration in NY.

116.    Based on the foregoing, Defendant caused the wrongful termination of Plaintiff, subjected Plaintiff to a hostile work environment and retaliated against Plaintiff based on her race as an African American woman in violation of 42 USC §1981 and tortiously interfered with Plaintiff's employment and tortiously interfered with Plaintiff's 2014 Agreement with Infosys under the New York State common law causes of action for tortious interference with contract and business opportunity or employment for at will employees.

**AS AND FOR A FIRST CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT OF PLAINTIFF'S CLAIMS AND REQUEST FOR RELIEF OF APPLICATION OF EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**

117.    Plaintiff repeats and re-alleges each and every allegation previously set forth as if fully set forth herein.

118.    The statute of limitations for wrongful termination and/or retaliation pursuant to 42 USC §1981 is four years from the date the claim accrued.

119.    Post-termination retaliation occurs when the employer retaliates against the employee after she is terminated and is a cognizable claim that continues from the date of termination as a pattern of unlawful conduct.

120.    In §1981 cases, courts look at the entire employment period instead of discrete acts of discrimination in assessing liability.

121.    Where there are discrete acts of discrimination by the Defendant employer against the Plaintiff employee, even where the discrete acts are outside the statutory time period, if the discrete acts are part of a continuing course of conduct of the employer's unlawful employment practices, the claim for hostile work environment is timely as long as one discrete unlawful act is within the statutory time period.  The employer's acts of retaliation may be considered even after it has terminated the Plaintiff.  *See e.g. Burlington N. & Santa Fe Ry. Co. v. White* 548 US 53, 67 (2006)

122.    A prima facie claim of fraudulent concealment to seek an equitable tolling of the statute of limitations requires 1) wrongful concealment by defendant; and 2) which prevented plaintiff's discovery of the nature of the claim within the limitations period; and 3) due diligence in pursuing the discovery of the claim.  *See, e.g. National Group for Communications v. Lucent Technologies Inc.*, 420 F. Supp.2d 253, 265 (SDNY 2006)

123.    As stated throughout this Complaint, Defendant concealed Plaintiff's claims against him with misrepresentations or omissions.  Specifically, during on or about 2015 Defendant stated in an email to Plaintiff's supervisors, other FS partners and/or human resources that Infosys was

risking its reputation by assigning Plaintiff to client projects. Defendant made this misrepresentation without client feed back to support the representation in order to interfere and prevent Plaintiff from obtaining work assignments.

124.    This misrepresentation made by Defendant was also made in retaliation for claims of hostile work environment that Plaintiff made to human resources concerning Plaintiff's supervisors who cursed at her in front of other employees; hushed her at staff meetings in front of other employees she was supposed to lead; and kept her out of other staff and client meetings to prevent her from completing assignments for the client. Defendant concealed these claims for retaliation and for tortious interference with Plaintiff's employment by refusing to discuss any work performance issues with Plaintiff, failing to remediate employees who discriminated against and harassed Plaintiff because she was the sole African American principal business consultant and directing human resources to provide Plaintiff with misrepresentations that the clients did not select her for work assignments.

125.    On or about 2016 Defendant interfered with Plaintiff's work assignments for AMEX and UBS by misrepresenting to Plaintiff that the clients wanted to hire someone local to NYC. Defendant pulled Plaintiff off of the UBS and/or AMEX projects in 2016 even after Plaintiff was already interviewed directly by the clients, selected and sent Plaintiff instructions and scheduled dates to start the projects directly from the clients. Defendant stated in emails to Plaintiff that the clients required Plaintiff to be local in NYC so the client selected another principal business consultant.

126.    Defendant testified at his August 5, 2022 deposition that during 2015 and 2016, neither of the clients located in NYC would have required that Plaintiff be local to NYC and that there were other principal business consultants who resided outside New York State that worked on AMEX

and UBS projects in NYC.  Plaintiff testified that for instance, there was a principal business consultant who lived in Wisconsin who worked on the AMEX and/or UBS projects in NYC.

127.     On or about July 1, 2016, Defendant made a request to human resources that Plaintiff be terminated for work performance issues and because clients had complained about Plaintiff.  These issues with Plaintiff  that Defendant complained of  were misrepresentations because at Defendant's deposition on or about August 5, 2022, Defendant stated that no clients had ever communicated directly with him with complaints about Plaintiff.  Moreover, an email from a supervisor who was interviewed by human resources stated that the FS partners believed Plaintiff had a good grasp and knowledge of technical material and issues or good technical skills. Defendant did not provide notice to Plaintiff about negative client feedback or discuss work performance issues and/or negative client feedback directly from the clients with Plaintiff during 2016.  Defendant as Plaintiff's manager did not at any relevant time warn plaintiff or notify plaintiff that he requested Plaintiff's termination.

128.     On or about July 6, 2016, Plaintiff filed a complaint with human resources that Defendant may be retaliating against her for a complaint she filed with human resources on or about June 2016 because a supervisor had submitted an inaccurate and negative employee feedback form ("EFF") for her work on the AMEX project that she successfully completed on or about February 2016.  Plaintiff stated in emails to human resources that Defendant would not return her calls or emails about upcoming client project assignments.

129.     Defendant engaged in a pattern of ignoring Plaintiff's inquiries and dereliction of his duties as Plaintiff's manager to counsel her on job performance and to provide notice of any negative client feed back or work performance issues.  Defendant's omissions concealed Plaintiff's claims against him.

130.    During all of 2015 and 2016, only human resources communicated with Plaintiff about Plaintiff's complaints.   Plaintiff's July 6, 2016 complaint about Defendant was determined as unfounded by human resources.   Accordingly, no amount of diligence would have uncovered Plaintiff's claims against Defendant during the statutory time period.  It was not until Defendant's deposition taken on or about August 5, 2022 in connection with Plaintiff's arbitration of her wrongful termination and retaliation against Infosys that Plaintiff discovered the claims detailed *supra*.  Within approximately one day after receipt of the August 5, 2022 deposition transcript on or about August 22, 2022, Plaintiff filed the instant Complaint.

131.    Plaintiff's claims under NYS common law for tortious interference with a three (3) year statute of limitations require application of state law on fraudulent concealment and equitable tolling.  *See e.g. Koral v. Sunders*, 36 F.4th 400, 409 (2d Cir. 2022)

132.    Under NYS law, equitable estoppel is applicable where the defendant conceals from Plaintff the fact that he has a cause of action and where the plaintiff is aware of his cause of action but the defendant induces him to forego suit until after the period of limitations has expired.  Id. at 410

133.    Under NYS law the doctrine of equitable tolling requires Plaintiff to establish that the defendant made a misrepresentation or concealed facts which he was require to disclose, that the plaintiff relied on the misrepresentation and that misrepresentation prevented plaintiff from bringing a timely claim or action.

134.    As alleged throughout this Complaint, because Defendant and Infosys concealed the reasons for Plaintiff's prolonged time on bench or inability to place Plaintiff on work assignments and Plaintiff's termination on or about September 23, 2016, no amount of diligence by Plaintiff would have revealed Plaintiff's claims within the statutory time period.  Defendant and Plaintiff

went to great lengths to divert the arbitration between Plaintiff and Infosys from NY to GA by misrepresentations to the AAA that Plaintiff last worked in GA and that a 2016 Agreement that was never signed by Plaintiff controlled the arbitration to prevent application of NY law.

135.    Based on the foregoing, Plaintiff seeks to apply the statute of limitations for fraud which is six years from the date of the fraud or two years from the date of discovery of the fraud and/or equitable tolling to the second and third causes of action.

## AS AND FOR A SECOND CAUSE OF ACTION FOR WRONGFUL TERMINATION, HOSTILE WORK ENVIRONMENT AND RETALIATION IN VIOLATION OF 42 USC §1981

136.    Plaintiff repeats and re-alleges each and every allegation previously set forth as if fully set forth herein.

137.    42 USC §1981(a) states in relevant part,  "[a]ll persons within the jurisdiction of the United States shall have the same right in ever State…to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

138.    A prima facie claim for wrongful termination, harassment and hostile work environment under 42 USC §1981 requires plaintiff to show: 1) she is a member of a protected class; and 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *See, Zheng v. GE* 2016 US Dist. LEXIS 4307 at 40 (SDNY 2016).

139.    Plaintiff is an African American woman and is a member of a protected class within the meaning of 42 USC §1981.  As set forth throughout this complaint, Plaintiff was qualified in her position as a principal business consultant for fortune 500 companies that hired Infosys to assist

and consult them on large electronic data issues.  Plaintiff possessed a master's degree level of education in information systems and a bachelor's degree in accounting with years of experience in leading large groups of employees.  As set forth throughout this Complaint, Plaintiff suffered adverse employment action taken by Defendant including but not limited to Defendant's request for termination on or about July 1, 2016; being relegated to administrative and secretarial tasks as a team lead; Defendant prevented Plaintiff's obtainment of advancement refusing Plaintiff's requests to take certification courses to advance her in her position as principal business consultant; Defendant denied Plaintiff assignments to clients who directly interviewed and selected her to work on their projects as well as bonus earning opportunities upon completion of those projects.

140.   Retaliation under 42 USC §1981 requires a showing that a complaint made for discrimination and the adverse employment action taken in retaliation by the employer is one that would likely dissuade a reasonable employee from making or supporting a charge of discrimination.

141.   All of Plaintiff's complaints ended with an investigation and determination by human resources that the complaints were unfounded and the day after Plaintiff made a complaint about not receiving assignment opportunities, Plaintiff was terminated on or about September 23, 2016.

142.   An individual may be held liable under 42 USC §1981 if that individual was personally involved in the alleged deprivation.

143.   A supervisor is liable under 42 USC §1981 by directly participating in the conduct or by 1) failing to take corrective action; 2) creation of a policy or custom fostering the conduct; 3) grossly negligent supervision, or deliberate indifference to the rights of others.

144.   At all relevant times, Defendant was Plaintiff's manager and as alleged throughout this complaint, Defendant failed to take corrective action against Plaintiff's supervisors and co-workers

27

who harassed and created a hostile work environment for Plaintiff. By ignoring Plaintiff's concerns and complaints and by siding with supervisors and co-workers who discriminated against and harassed Plaintiff, Defendant fostered the policy and custom of perpetuating racist stereotypes about African Americans, harassment of Plaintiff based on those stereotypes and ignoring allegations concerning that conduct. By completely ignoring Plaintiff's concerns about discrimination against her, Defendant was derelict in his duties as a manager and failed to take corrective measures such as to counsel employees and resolve hostile workplace issues directly.

145.   The assignment of inappropriate tasks, an excessive workload and reprimanding an employee for no reason, giving the employee a negative review as a result of discriminatory intent, because of her race, may be an adverse action.

146.   As alleged supra, Plaintiff suffered a hostile work environment when her supervisors throughout the relevant time period of her employment with Infosys cursed at and hushed her into silence at staff meetings, in front of other team employees she was assigned lead, kept her out of meetings, and left her off of emails and calls with the client to prevent her from completing her work assignments and then complained about Plaintiff's work performance to Defendant.

147.   Plaintiff's supervisors also relegated Plaintiff to administrative tasks such as taking meeting minutes at every meeting and providing secretarial or clerical tasks to the supervisors when Plaintiff was supposed to be leading a team of employees.

148.   As alleged supra, Plaintiff retaliated against Defendant during 2014 and 2016 for complaining about her supervisors who cursed at her and hushed her at staff meetings in front of team employees she was assigned to lead and the supervisors who left her out of meetings and communications with clients to prevent Plaintiff from completing her work assignments and then complained about Plaintiff's work performance to Defendant.

149.    Defendant is individually liable under 42 USC 1981 for perpetuating this hostile work environment and failing to correct or counsel the supervisors' wrongful and discriminatory conduct toward Plaintiff.

150.    The supervisor's unlawful treatment of Plaintiff was race based animus as Plaintiff observed her supervisors interacting with other non-African American principal business consultants and these supervisors did not curse at them or hushed them in front of team employees they were assigned to lead.

151.    These supervisors stated that Plaintiff was slow to grasp concepts necessary to complete assignments; that Plaintiff did not communicate well with clients; and that Plaintiff could not lead her team which were stereotypes that African Americans are not intelligent, slow and unable to communicate in a white fortune 500 corporate environment.

152.    Supervisors also misrepresented to Defendant that the clients were dissatisfied with Plaintiff's work performance and the clients requested that Plaintiff be taken off of their projects. However, these supervisors were unable to substantiate that the client made these comments and requests that Plaintiff be removed.

153.    Based upon information and belief, one supervisor reported to human resources that the FS partners stated Plaintiff had good technical skills.

154.    At all relevant times, Defendant was aware that racial discrimination was unlawful but engaged in racial discrimination against Plaintiff when he communicated to other FS partners that Plaintiff had work performance issues based on the supervisors' negative and racist comments.

155.    Based upon information and belief, on or about 2016, Defendant was aware that Plaintiff was the only African American female principal business consultant in the FS division and made a racist communication about Plaintiff to other FS partners and managers.  Defendant stated that

Infosys was risking its reputation by assigning Plaintiff to client projects.  As alleged throughout this Complaint, Plaintiff made this comment even though in 2016, Infosys client AMEX had sent a positive email to Plaintiff thanking and commending her for her hard work and fast turn around on deliverables.  But for Plaintiff's race, Defendant would not have made this racist comment to interfere with and prevent work opportunities for Plaintiff.

156.    On or about June 1, 2016, Plaintiff filed a complaint against her Infosys supervisor for submitting a negative employee feed back form based on Plaintiff's alleged negative work performance on the AMEX project.

157.    This negative feedback was a misrepresentation as the client directly emailed Plaintiff with copies to over a dozen AMEX employees stating Plaintiff performed beyond expectations with fast turn arounds on deliverables.

158.    Defendant testified at his August 5, 2022 deposition that he had never received negative feedback about Plaintiff directly from any client.  Another of Plaintiff's supervisors stated that Infosys partners all stated to him that Plaintiff had good technical skills.

159.    Based on Plaintiff's complaint to human resources regarding the June 2016 complaint concerning her EFF, Defendant retaliated against Plaintiff by requesting her termination on or about July 1, 2016.

160.    Based on Plaintiff's complaint to human resources regarding the June 2016 complaint concerning her EFF and her complaint against Defendant dated on or about July 6, 2016, Human Resources terminated  Plaintiff on or about September 23, 2016 after completing investigations on those complaints which it determined were unfounded.

161.    On or about February 1, 2016, Plaintiff complained to a FS Partner and to HR that she was being undermined by her supervisor on the NY Life project in NYC, when her supervisor hushed

her at staff meetings in front of other Infosys employees Plaintiff was assigned to lead, and left Plaintiff out of communications and meetings with the client so that Plaintiff could not timely complete work assignments. Thereafter, that supervisor for the NY Life project complained to human resources and Defendant that Plaintiff's work performance was subpar.

162.    Based upon information and belief, Defendant retaliated against Plaintiff for complaints concerning her supervisor Samir on the NY Life project by preventing Plaintiff from completing her assignments on the AMEX and UBS projects on or about March 2016 and further denying her bonuses for completion of those projects.

163.    But for Plaintiff's race, Defendant would not have requested the termination of Plaintiff on or about July 1, 2016.

164.    But for Plaintiff's race, Defendant would not have denied Plaintiff's request to take a certification course to further her work opportunities with Infosys clients.

165.    But for Plaintiff's race Defendant would have assigned Plaintiff to client projects during the relevant time period of Plaintiff's employment.

166.    But for Plaintiff's race Defendant would not have given Plaintiff unreasonable deadlines for assignments and assignments that were already delayed or had performance issues because of the previous supervisors or principal business consultant and then blamed Plaintiff for the previous employees' delays and/or poor work performance.

167.    But for Plaintiff's race, Plaintiff would have completed work for the clients at AMEX and UBS who directly interviewed her and selected her to work and earned all bonuses due to Plaintiff.

168.    But for Plaintiff's race, she would not have been placed on bench and remained on bench that Infosys considered "prolonged bench" and used as a basis for her termination on or about September 23, 2016.

169.    But for Plaintiff's race, Defendant would not have ignored her complaints about gender discrimination as complaints by non-African American women would have been addressed and resolved.

170.    Defendant retaliated against Plaintiff when she made complaints about her supervisors during the relevant time period by preventing her assignments to client projects in 2015 and 2016.

171.    Defendant retaliated against Plaintiff by requesting her termination because he believed Infosys was risking its reputation by placing Plaintiff in a client facing assignment and justifying the request for termination based on other supervisors' unlawful and racist conduct towards Plaintiff as alleged throughout this Complaint.

172.    Based on the foregoing, Defendant was liable to Plaintiff for wrongfully terminating her, retaliating against Plaintiff and depriving her of work assignments, work bonuses, educational opportunities, and fostering unlawful discriminatory conduct and educational opportunities pursuant to 42 USC 1981.  Plaintiff therefore seeks back pay, prospective pay, bonuses and other remuneration, attorneys fees, punitive and compensatory damages.

173.    As a result of the discrimination, adverse employment actions, and retaliation, Plaintiff has suffered mental anguish and/or emotional distress from anxiety, lack of sleep, depression, lack of enjoyment of life, feelings of helplessness, and further seeks damages for mental anguish and/or emotional distress.

### AS AND FOR THE THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH EMPLOYMENT OR BUSINESS RELATIONSHIPS

174.    Plaintiff repeats and re-alleges each and every allegation previously set forth as if fully set forth herein.

175.   Under NY law, a tortious interference claim requires: 1) a valid contract; 2) knowledge by a third party to intentionally and improperly procure the breach of the contract and 4) damage to the plaintiff as a result of the breach.

176.   An at-will employee who does not have a contract with the employer may establish a claim for tortious interference if the defendant employee engaged in fraud or misrepresentation, made threats or acted with malice.  *See, Jean-Louis v. Am. Airlines*, 2010 US Dist LEXIS 77292 at *7 (SDNY 2010)

177.   In the alternative, should the court find that there was no tortious interference with employment due to a lack of a contract, Plaintiff pleads a claim for Tortious interference with prospective business relationships and Economic Advantage.  See, e.g. Adecco at 47 (This Court ruled that a tortious interference with business relations and economic advantage "may be pled as an alternative to a tortious interference with contract claim, in the event that a court finds that the contract at issue is unenforceable."

178.   Under New York law, interference with a contract terminable at will (employment at will) is actionable under the theory of tortious interference with business relations.  *See, e.g. Guard Life Corp. v. Parker Hardware Mfg, Corp*, 50 NY 2d 183, 190-191 (1980)

179.   Under New York law, a claim for tortious interference requires a plaintiff to show that  1) the plaintiff had business relations with a third party; 2) Defendant interfered with those business relations with a third party, 3) Defendant acted with the sole purpose of harming the plaintiff or used wrongful means; and 4) the business relationship was injured.  *See e.g. Ray v. Franchini*, 2014 NY Misc. LEXIS 6395 *10

180.   In the Second Circuit, the federal courts have applied New York State law claims for tortious interference with prospective business relationships and Economic Advantage to require

the plaintiff to show 1) business relations with a third party; 2) defendants' interference with those business relations; 3) defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and 4) injury to the relationship. *Adecco USA, Inc. v Staffworks, Inc. et al.,* 2020 US Dist. LEXIS 226382 at *47 (NDNY 2020)

181.   As alleged throughout this Complaint, at all relevant times, Defendant was the managing partner of the financial services ("FS") division of Infosys.

182.   Based upon information and belief, as alleged throughout this Complaint, all of the FS partners, supervisors, managers and employees reported directly to Defendant.

183.   Based upon information and belief, as alleged throughout this Complaint, Defendant was aware of all client accounts or projects within FS.

184.   At all relevant times, Defendant had the authority to assign or prevent assignment of projects to Plaintiff.

185.   As alleged throughout this Complaint Defendant was aware that Infosys had client relationships or contracts that the Plaintiff was assigned to work on as a principal business consultant.  Defendant was aware that Plaintiff was interviewed directly by the clients and the clients directly selected Plaintiff to work on their projects.

186.   Defendant was aware that on or about February 2016, Infosys' client AMEX provided positive feedback about the Plaintiff's work performance.

187.   Based upon information and belief, Defendant interfered with and prevented Plaintiff from beginning work on the second Amex project on or about March 2016 after client AMEX selected Plaintiff to work on the project.

188.   Based upon information and belief Defendant misrepresented to AMEX that Plaintiff was not available to work on the second project starting on or about March 2016.

189.     Based upon information and belief Defendant misrepresented to Plaintiff that AMEX did not select her for the second project starting on or about March 2016.

190.     On or about March 2016, Plaintiff was interviewed directly by Infosys client UBS and UBS directly selected Plaintiff work on a project to start on or about March 2016.

191.     Based upon information and belief Defendant misrepresented to Plaintiff that the client UBS did not select her to work on the project starting on or about March 2016 because UBS wanted a worker who was local to NYC.

192.     Based upon information and belief Defendant misrepresented to UBS that Plaintiff was not available to start work on the UBS project scheduled to start on or about March 2016.

193.     On or about August 5, 2022, Defendant testified at his deposition that UBS located in NYC would not have requested someone local to NYC and there were other employees who travelled from outside NY to work for UBS in NYC.  For instance, Defendant testified that he recalled one employee who travelled to NYC from Wisconsin to work on the UBS project.

194.      Based upon information and belief, since on or about March 2016 through the date of Plaintiff's termination on or about September 23, 2016, Defendant communicated to other FS partners to not place or assign Plaintiff on any client projects in retaliation for Plaintiff's complaints about her supervisors and hostile work environment because Plaintiff was the only African American female principal business consultant.

195.     Based on the foregoing interference with Plaintiff's employment opportunities, Defendant further interfered with Plaintiff's bonus opportunities as alleged in this Complaint based on Infosys earnings and based on Plaintiff's completion of work projects.

196.     Based upon information and belief, since the start of Plaintiff's employment with Infosys, supervisors characterized Plaintiff, the only African American principal business consultant as not

working quickly enough or having difficulty with client relations or communication skills or having low work performance skills or incapable of completing work in a timely manner which evidence that Plaintiff's supervisors made negative, racist and stereotypical comments about Plaintiff because she was African American.

197.    On or about 2015, Plaintiff's supervisors complained to Defendant that the clients requested  that Plaintiff be "rolled off" or taken off of projects without any proof that the client made such requests.

198.    Based upon information and belief, none of the clients that Plaintiff worked for made express requests to have Plaintiff removed from any projects.

199.    Based upon Defendant's unlawful interference with her employment Plaintiff suffered mental anguish and emotional distress.

200.    Based on the foregoing Plaintiff seeks actual, compensatory and punitive damages, back pay / including bonuses and other remuneration that Defendant interfered and prevented Plaintiff from obtaining and prospective pay; and pre and post judgment interest.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR<br>TORTIOUS INTERFERENCE WITH CONTRACT

201.    Plaintiff repeats and re-alleges each and every allegation previously set forth as if fully set forth herein.

202.    Under NY law, a tortious interference with contract claim requires: 1) a valid contract; 2) knowledge by a third party to intentionally and improperly procure the breach of the contract and 4) damage to the plaintiff as a result of the breach.

203.    As previously set forth throughout this complaint, there was a valid mutual arbitration agreement dated on or about October 29, 2014 ("2014 Agreement") between Plaintiff and her

employer Infosys that set the place of arbitration and governing law as where the employee works or worked when her claims arose.

204.    Defendant was aware of the 2014 Agreement and misrepresented to Infosys and its agents or attorneys and/or the American Arbitration Association ("AAA")  that the last place worked by Plaintiff was Georgia with less employee protective laws thereby causing Infosys to breach the mutual arbitration agreement with Plaintiff.

205.    As set forth throughout this Complaint, on or about December 2020, Plaintiff's arbitration was set to take place in New York and "AAA" sent an arbitrator selection list of New York arbitrators to Plaintiff and Infosys.  Infosys instead filed an objection based on Defendant's misrepresentation that Plaintiff's last place of work where the claim arose was Georgia, but in fact was New York under Defendant's supervision or management.

206.    Under the plain meaning of the 2014 Agreement, Plaintiff last worked at AMEX in New York City where the claim arose against Infosys for retaliation under 42 USC §1981.

207.    As alleged throughout this Complaint, based on Defendant's misrepresentations to Infosys and AAA, Defendant tortiously interfered with Plaintiff and Defendant's 2014 Agreement.  This damaged Plaintiff in the amount or value of her claims lost as a result of the 2020 arbitration that was diverted to GA in 2021.

208.    As a result of the GA Arbitrator's coercion of Plaintiff to withdraw her claims under Texas law and dismissing Plaintiff's other rights and claims under the 2014 Agreement, Plaintiff was damaged in the value of her claims which included but were not limited to back pay, prospective pay, bonuses and other remuneration, mental anguish / emotional distress damages, attorneys fees and pre and post judgment interest.

209.    Based upon Defendant's misrepresentations, Plaintiff suffered additional costs and attorneys fees to object to the GA Arbitrator's rulings and to bring the Petition to compel arbitration in NYThe breach of the 2014 Agreement by Infosys caused Plaintiff damages equal in value to her garden variety emotional damages claim and her 42 USC 1981 damages in her arbitration against Infosys because the GA Arbitrator intentionally disregarded New York State and Second Circuit case law precedent during all phases of the arbitration which caused Plaintiff's loss of rights and claims under the 2014 Agreement had the arbitration occurred in New York.

210.    The breach of the 2014 Agreement further caused mental anguish and emotional distress.

211.    The breach of the 2014 Agreement caused Plaintiff to incur further attorneys fees to object to the place and governing law of her arbitration against Infosys and to file a petition in this Court to compel arbitration in NY.

212.    As alleged throughout this Complaint, Defendant further interfered with Plaintiff's sub-agreements with Infosys clients AMEX and UBS after Plaintiff agreed to work on their projects by signing clients' confidentiality agreements or emailing confirmations to the clients that she would be available for work during the relevant time period of her employment, by misrepresenting to Plaintiff that the client did not select her to work and causing Plaintiff to be a no-show or pulling Plaintiff off of projects under the guise that it was at the clients' requests. Based upon information and belief, Defendant misrepresented to the clients that Plaintiff was not available to work even after the clients had interviewed and selected Plaintiff to work on their projects.

213.    Based upon the foregoing, Plaintiff seeks actual, compensatory, back pay, prospective pay, bonuses and other remuneration, punitive damages, attorneys fees and pre and post judgment interest.

**Wherefore**, Plaintiff respectfully requests the following relief by the Court:

a)      To declare Defendant's conduct was unlawful and liable under i) 42 USC §1981 for wrongful and discriminatory termination, hostile work environment and retaliation during and post-employment and ii)  New York State common law of tortious interference with employment opportunities and iii) tortious interference with contract (2014 Agreement) between Plaintiff and Infosys: and

b)      To declare Defendants' unlawful conduct set forth *supra* caused Plaintiff mental anguish and/or emotional distress: and

c)      To Award i) actual, ii) compensatory, iii) punitive, iv) garden variety mental anguish / emotional distress damages, v) back pay, vi) prospective pay, vii) bonuses and any other remuneration that Defendant interfered with and prevented Plaintiff from obtaining; viii) attorneys fees pursuant to 42 USC 1981 et seq., ix) statutory pre and post judgment interest; and

d)      Any and other further relief as this Court deems just and proper.

Dated: New York, NY
          August 23, 2022

                                        Law Office of Susan Ghim
                                        Attorney for Plaintiff Coretta Roddey


                                        /s/ Susan Ghim

                                        _____

                    BY:      Susan Ghim
                                 244 Fifth Avenue
                                 Suite 1434
                                 New York, NY 10001
                                 (646) 889-1011 / sghim@ghimlaw.com