UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CORETTA RODDEY,                                             :
                                                            :
                            Plaintiff,                      :
                                                            :        22-CV-7183 (VSB)
            - against -                                     :
                                                            :        **OPINION & ORDER**
                                                            :
RAJESH MENON,                                               :
                                                            :
                            Defendant.                      :
                                                            :
------------------------------------------------------------X

Appearances:

Susan Ghim
Law Office of Sudan Ghim
New York, NY
*Counsel for Plaintiff*

Benson Pope
Littler Mendelson
Atlanta, GA

Lauren Jill Marcus
Littler Mendelson
Newark, NJ
*Counsels for Defendants*

VERNON S. BRODERICK, United States District Judge:

    Before me is the motion to compel arbitration and dismiss all claims, (Doc. 11), filed by Rajesh Menon ("Menon" or "Defendant") against Coretta Roddey ("Roddey" or "Plaintiff). Because I find that the parties entered into a valid agreement to arbitrate, Defendant's motion to compel arbitration is granted. Rather than dismiss the action, however, I find that a stay of proceedings is warranted. Accordingly, Defendant's motion is GRANTED IN PART and DENIED IN PART, and this case is STAYED pending the outcome of arbitration.

I.      **<u>Factual Background</u>**[1]

From October 29, 2014 to September 23, 2016, Plaintiff worked as the only African American Principal Business Consultant at Infosys Limited ("Infosys"). (Doc. 1 ("Complaint" or "Compl.") ¶ 1.) Plaintiff held a bachelor's degree in accounting with honors, a master's degree in information systems, and had experience serving in the United States Army. (*Id.* ¶¶ 44, 46.) During all relevant times, Plaintiff was a resident of Georgia. (*Id.* ¶ 43.) Although Plaintiff was a Georgia resident, when human resources indicated she would be headquartered in Georgia upon her hiring, she responded "by email stating that headquarters should be NY as the position she accepted in the [Financial Services] division was located in NY" and that she intended to physically work in New York. (*Id.* ¶ 50.)

Defendant was the sole managing partner of Infosys's Financial Services ("FS") Division in the United States. (*Id.*) In this role, Defendant had authority to hire, fire, discipline, set renumeration, assign work, and terminate Plaintiff's employment. (*Id.* ¶ 14.) During the relevant time period, all other FS partners, managers, supervisors, and employees reported to Defendant. (*Id.* ¶ 13.)

During 2016, Plaintiff was interviewed and selected directly by clients to work on their projects. (*Id.* ¶ 18.) Although these clients provided positive feedback to Defendant about Plaintiff's work and selected Plaintiff for subsequent projects, Defendant misrepresented to the clients that Plaintiff was not available to work on their projects. (*Id.* ¶¶ 19–25.) Because of Plaintiff's race, Defendant discouraged other partners and supervisors at Infosys from assigning

---

[1] The facts contained in this section are based upon the factual allegations set forth in the Complaint ("Complaint") filed on August 23, 2022 by plaintiff Coretta Roddey ("Plaintiff"). (Doc. 1.) I assume the allegations in the Complaint to be true in considering the motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

2

her to projects. (*Id.*) "During all relevant times of Plaintiff's employment, non-African American supervisors relegated Plaintiff to clerical tasks, hushed her at staff meetings in front of employees Plaintiff was assigned to lead and complained to Defendant that Plaintiff's work performance was substandard without substantiated bases in fact. Supervisors and co-workers framed Plaintiff as not working quickly enough or having issues with management when they were being complained of as causing issues." (*Id.* ¶ 34.) Plaintiff's supervisors also made unsubstantiated, negative, racist, and stereotypical comments about Plaintiff because she was African American. (*Id.* ¶ 37.) Defendant was aware of this conduct but ignored it and instead conspired with Infosys human resources to terminate Plaintiff's employment for complaining about the unlawful workplace conduct. (*Id.* ¶¶ 37, 40, 41.) On September 23, 2016, Plaintiff's employment was terminated purportedly because she spent "prolonged time on bench due to the inability to staff [her] on Infosys projects." (*Id.* ¶¶ 19–25.) No other employee in her position had their employment terminated for being on the bench for over ninety days. (*Id.* ¶ 62.)

On September 22, 2020, Plaintiff filed a demand for arbitration with Infosys pursuant to their October 29, 2014 Mutual Arbitration Agreement (the "2014 Agreement"). (*Id.* ¶ 3.) Defendant was not a party to the 2014 Agreement and there was no separate arbitration agreement between Plaintiff and Defendant. (*Id.*) The 2014 Agreement provided that the place of arbitration would be where Plaintiff "works or worked when the claim arose." (*Id.*) Because at the time of her termination, Plaintiff's prior two projects and last scheduled project were in New York City, she sought arbitration in New York City. (*Id.*) In December 2020, the American Arbitration Association ("AAA") sent Plaintiff and Infosys options for New York arbitrators. (*Id.*) However, Plaintiff alleges that Defendant misled the AAA into moving the arbitration to Georgia, over her objections. (*Id.*)

3

## II. Procedural History

On August 23, 2022, Plaintiff initiated this case by filing the Complaint. (*Id.*) In the Complaint, Plaintiff raises three causes of action. Plaintiff's first claim is for wrongful termination, hostile work environment and retaliation in violation of 42 USC § 1981. In support of this claim, Plaintiff asserts that, as her manager, "Defendant failed to take corrective action against Plaintiff's supervisors and co-workers who harassed and created a hostile work environment for Plaintiff." (*Id.* ¶ 144.) Plaintiff's second claim, ("Tortious Interference I"), is for tortious interference with employment or business relationships. In support of this claim, Plaintiff alleges that Defendant's misconduct resulted in the termination of her employment. (*See id.* ¶¶ 181–199.) Plaintiff's third claim, ("Tortious Interference II"), is for tortious interference with contract. In support of this claim, Plaintiff alleges that Defendant misrepresented the last place she worked, which caused Infosys to breach the 2014 Agreement by arbitrating their disputes in Georgia. (*Id.* ¶¶ 203–207.) Plaintiff also asserts that Defendant fraudulently concealed information which would have entitled her to tolling of the applicable statutes of limitations. (*Id.*)

On October 25, 2022, Defendant filed his motion to dismiss the Complaint and compel arbitration with a supporting memorandum of law and declaration. (Docs. 11–13.) On December 12, 2022, Plaintiff filed her opposition to Defendant's motion, (Doc. 21), and a cross motion for partial summary judgment, (Doc. 22). On January 6, 2023, I ordered that Plaintiff's partial motion for summary judgment be held in abeyance until a decision on the motion to dismiss. (Doc. 16.) On January 19, 2023, Defendant filed a motion for sanctions, (Doc. 38), along with a memorandum of law, (Doc. 39), and a declaration in support, (Doc. 40). On January 23, 2023, Plaintiff requested "that the due date on her opposition to Defendant's

Sanctions motion be extended or held in abeyance, until after the determination of Defendant's motion to dismiss." (Doc. 41.) On January 24, 2023, I granted Plaintiff's motion to hold the motion for sanctions in abeyance. (Doc. 42.) On January 30, 2023, Defendant filed his reply brief, (Doc. 43), and an affidavit, (Doc. 44), in support of his motion to dismiss.

### III.  Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2); *see also* 9 U.S.C. § 4 (allowing a party to an arbitration agreement to petition a district court for an order compelling arbitration where a counterparty "fail[s], neglect[s], or refus[es] . . . to arbitrate" under the terms of an arbitration agreement). A court must therefore first determine: (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of the arbitration agreement. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010).

Courts evaluate a motion to compel arbitration pursuant to the FAA under a standard similar to the standard for a summary judgment motion. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "A court must therefore 'consider all relevant, admissible evidence submitted by the parties' and 'draw all reasonable inferences in favor of the non-moving party.'" *Mobile Real Estate, LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 468 (S.D.N.Y. 2020) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). "If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an

5

arbitration provision, a trial as to that issue will be necessary[.]" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof."). However, the "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010); *accord Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.")

"Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank*, 661 F.3d at 172 (internal quotation marks omitted); *see also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) (citations omitted) ("[A] [c]ourt must grant a motion to compel arbitration if the pleadings, discovery materials before the [c]ourt, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.").

## IV.   Discussion

### A.  *Arbitration Agreement*

Plaintiff's claims cannot survive because, as Defendant asserts, "all of the claims in Plaintiff's Complaint are covered by the arbitration agreement."[2] (Doc. 12 at 4.) Indeed,

---

[2] I may consider the arbitration agreement when deciding Defendant's motion to compel arbitration. *See Pappas v. City of New York*, No. 23-CV-6010, 2024 WL 2093472, at *3 n.5 (S.D.N.Y. May 9, 2024) (citing *Alexander v.*

6

Plaintiff does not dispute that issues related to her employment are subject to the 2014 Agreement.  (*Id*. at 1 (acknowledging the 2014 Agreement between Infosys and Plaintiff).)  When reviewing a motion to compel arbitration, courts consider "whether the parties agreed to arbitrate; (2) the scope of that agreement; and, (3) if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (internal quotation marks omitted).

Plaintiff argues that Defendant's motion to dismiss and compel arbitration should be denied because there "was no mutual arbitration agreement between Plaintiff and Defendant individually at any relevant time." (Doc. 12 at 1.)  This argument ignores the relevant case law.  "[C]ourts commonly conclude that when an employee's claims against both a signatory employer and a non-signatory co-employer or supervisor arise out of the same alleged misconduct, the non-signatory co-employer or supervisor may invoke arbitration."  *Lee v. Engel Burman Grande Care at Jericho, LLC*, No. 20-CV-3093, 2021 WL 3725986, at *5 (E.D.N.Y. Aug. 23, 2021) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010)); *see also Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 303 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011).

Court must undertake "a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them" to determine whether "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *Pena v. 220 E. 197 Realty LLC*, No. 20-CV-7039, 2021 WL

---

*Possible Prods., Inc.*, 336 F. Supp. 3d 187, 192 n.2 (S.D.N.Y. 2018); *Purcell v. Navient Sols., LLC*, No. 18-CV-6045, 2019 WL 188693, at *2 (S.D.N.Y. Jan. 14, 2019)).

7

3146031, at *2, n.1 (S.D.N.Y. July 23, 2021). Here, Defendant and the signatory Infosys are closely tied. Defendant was an employee of Infosys and "had the authority to hire, fire, discipline, set rates of pay, bonuses, and any other remuneration, assign work, terminate assigned work, and set or change all other terms and conditions of Plaintiff's employment with Infosys." (Compl. ¶ 14.) Moreover, the 2014 Agreement explicitly includes "claims involving any current or former . . . agent or employee of Infosys." (Doc. 13-1 at 1; Compl. at ¶ 1.) Further, all of Plaintiff's claims arise out of Defendant's role as an employee of Infosys, and the dispute Defendant seeks to arbitrate is therefore "intimately founded in or intertwined with the underlying agreement contemplating arbitration." *In re Currency Conversion Fee Antitrust Litig.*, No. 04-CV-5723, 2005 WL 2364969, at *4 (S.D.N.Y. Sept. 27, 2005). Accordingly, I find that the 2014 Agreement applies to claims against Defendant.

Having found that the 2014 Agreement applies to Defendant, I must now consider whether Plaintiff's claims fall within the scope of that agreement. "In determining the scope of an arbitration agreement, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010) (internal quotations omitted). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Under the 2014 Agreement, Plaintiff agreed to "arbitrate before a neutral arbitrator any

and all existing or future disputes or claims between [Plaintiff] and Infosys that arise out of or relate to [Plaintiff's] recruitment, employment, or separation from employment with Infosys, including claims involving any current or former . . . agent or employee of Infosys." (Doc. 13-1 at 1; Compl. at ¶ 1.)  All of Plaintiff's claims relate to her employment with and separation from Infosys, and therefore fall within the scope of the 2014 Agreement.  In fact, Plaintiff's allegations are duplicative of, and indeed almost identical to, those asserted in a separate arbitration against Infosys (the "Infosys Arbitration").[3]

Finally, Plaintiff's only federal statutory claim arises under § 1981.  Plaintiff does not argue that Congress intended claims under § 1981 to be nonarbitrable.  Nor could she.  *See Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016) (noting that "[c]laims under Section 1981 . . . may be made subject to arbitration"); *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231 (2d Cir. 2006) (finding that § 1981 claims are arbitrable).  Accordingly, because the 2014 Agreement covers Defendant, and all of Plaintiff's claims fall within the scope of that agreement, I find that they must be arbitrated.

### B.  *Stay or Dismissal of the Action*

Having determined that Plaintiffs claims fall within the scope of a valid arbitration agreement, I must determine whether the action should be dismissed or stayed.  Recently, the Supreme Court made clear that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay

---

[3] As Defendant points out, Plaintiff and Infosys have now been litigating the Infosys Arbitration for a number of years.  (Doc. 12 at 3.)  On November 3, 2022, I denied Plaintiff's motion to enjoin the Georgia arbitration and to compel another arbitration in New York.  *See Roddey v. Infosys Techs. Ltd., Inc.*, No. 22-CV-6310, 2022 WL 16700270 (S.D.N.Y. Nov. 3, 2022).  Plaintiff's application to enjoin the Georgia arbitration and the instant action appear to be an inappropriate and blatant attempt to end-run the Infosys Arbitration.  In fact, in denying Plaintiff's motion to enjoin the Georgia arbitration, I found that "[r]ather than raising a legitimate dispute, Petitioner appears to be forum-shopping for a more sympathetic ear."  *Id.* at *4.

the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see* 9 U.S.C. § 3 (providing that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). Pursuant to this mandate, I will stay, rather than dismiss, the action pending arbitration.[4]

## V.  Conclusion

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED and I refer Plaintiff's claims to arbitration. The matter is hereby STAYED pending the completion of arbitration. The parties are directed to submit a joint status letter 120 days from the date of this Opinion & Order, advising me as to the status of arbitration proceedings. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 11.

SO ORDERED.

Dated: September 9, 2024
      New York, New York

                                            _____
                                            Vernon S. Broderick
                                            United States District Judge

---

[4] Although I decline to address the merits of Defendant's motion to dismiss, I note that it appears that all but Plaintiff's Tortious Interference II claim are untimely. Plaintiff did not file the Complaint until six years after she was terminated in September 2016, (Compl. ¶ 1), almost two years after the four-year statute of limitations had run.